J-S66030-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: L.J.W. | | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: B.W., NATURAL FATHER | | No. 851 WDA 2015 |

Appeal from the Decree Entered May 4, 2015,
in the Court of Common Pleas of Butler County, Orphans'
Court, at No: O.A. No. 42 of 2014

| | | |
|---|---|---|
| IN RE: D.M.X.W. | | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: B.W., NATURAL FATHER | | No. 852 WDA 2015 |

Appeal from the Decree Entered May 4, 2015,
in the Court of Common Pleas of Butler County, Orphans'
Court, at No: O.A. No. 41 of 2014

| | | |
|---|---|---|
| IN RE: D.M.X.W. | | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: B.W., NATURAL FATHER | | No. 957 WDA 2015 |

Appeal from the Order Entered May 8, 2015,
in the Court of Common Pleas of Butler County, Criminal
Division, at No: D.P. No. 27 of 2013

| | | |
|---|---|---|
| IN RE: L.J.W. | | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: B.W., NATURAL FATHER | | No. 958 WDA 2015 |

Appeal from the Order Entered May 8, 2015,
in the Court of Common Pleas of Butler County, Criminal
Division, at No: CP-10-DP-0000028-2013

BEFORE:  OLSON, STABILE, and STRASSBURGER,* JJ.**FILED DECEMBER 15, 2015**

---

* Retired Senior Judge assigned to the Superior Court.

MEMORANDUM BY STABILE, J.:

B.W. (Father) appeals from the decrees entered May 4, 2015, in the Court of Common Pleas of Butler County, which involuntarily terminated his parental rights to his minor sons, L.J.W., born in April of 2007, and D.M.X.W., born in May of 2009 (collectively, the Children).[1]  Father also appeals from the orders entered May 8, 2015, which changed the Children's permanency goals to adoption.  Additionally, Father's counsel has filed a motion to withdraw and brief pursuant to **Anders v. California**, 386 U.S. 738 (1967), and **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009). Upon review, we grant counsel's motion to withdraw and affirm the decrees and orders.

On approximately May 9, 2013, the Butler County Children and Youth Agency (the Agency) received a report indicating that Mother was using heroin, and that Mother and Father were "[f]ighting."  N.T., 1/12/15, at 13. On May 10, 2013, Agency caseworker, Heather Kneiss, visited Mother's home to investigate the report.  *Id.* at 13-14.  During the visit, Mother admitted to using heroin.  *Id.* at 15.  Mother explained to Ms. Kneiss that Father had traveled from Pittsburgh to assist with the Children while she went to an inpatient rehabilitation facility.  *Id.*  Mother entered a rehabilitation facility on May 13, 2013, but did not complete treatment.  *Id.*

---

[1] The parental rights of the Children's mother, T.M. (Mother), were terminated by separate decrees entered that same day.  Mother is not a party to the instant appeal.

at 16. Additionally, the Agency received information that Father may be using drugs and failing to feed the Children. ***Id.***

Ms. Kneiss visited Mother's home again on May 23, 2013. ***Id.*** During the visit, Mother admitted to taking Vicodin that had not been prescribed to her. ***Id.*** Father admitted to taking Vicodin, but claimed that he received it from a dentist. ***Id.*** at 16-17. Father could not provide a prescription to support this claim. ***Id.*** at 17. As a result, a safety plan was implemented, whereby Mother and Father were to be monitored at all times while with the Children. ***Id.***

Ms. Kneiss visited the home for a third time on June 11, 2013. ***Id.*** Once there, Ms. Kneiss discovered that the safety plan had "fallen through" the weekend before. ***Id.*** Mother admitted to continued drug use. ***Id.*** at 18. Father submitted to a drug screen, and tested positive for opiates and cocaine. ***Id.*** at 17-18. Accordingly, the Children were removed from the care of Mother and Father, and placed in foster care. ***Id.*** The Children were placed in their current foster home on June 19, 2013, and adjudicated dependent on August 2, 2013. ***Id.*** at 19.

On July 29, 2014, the Agency filed petitions to terminate Father's parental rights to the Children involuntarily. The Agency filed petitions to change the Children's permanency goals to adoption on October 21, 2014. A combined termination and goal change hearing was held on January 12, 2015, February 23, 2015, and March 9, 2015. During the hearing, the

orphans' court heard the testimony of Agency caseworker, Heather Kneiss; Agency caseworker, Michelle Womer; Ms. Rebecca Toogood, who formerly was employed at Family Pathways; Family Pathways outpatient therapist, Sandra Booth; Agency caseworker, Aaron Williams; Family Pathways mental health worker, Angela Simmons; Ms. Kaylie Baker, who formerly was employed at the Ellen O'Brien Gaiser Center; Mother; and Father. Following the hearing, on May 4, 2015, the court entered decrees terminating Father's parental rights. The court also entered orders changing the Children's permanency goals to adoption on May 8, 2015. Father timely filed notices of appeal on May 27, 2015, along with concise statements of errors complained of on appeal. Father's counsel filed an **Anders** brief on July 22, 2015, and filed a motion to withdraw on July 23, 2015.

Before reaching the merits of Father's appeal, we must first address counsel's request to withdraw. **See Commonwealth v. Rojas**, 874 A.2d 638, 639 (Pa. Super. 2005) ("'When faced with a purported **Anders** brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw.'") (quoting **Commonwealth v. Smith**, 700 A.2d 1301, 1303 (Pa. Super. 1997)). "In **In re V.E.**, 417 Pa.Super. 68, 611 A.2d 1267 (1992), this Court extended the **Anders** principles to appeals involving the termination of parental rights." **In re X.J.**, 105 A.3d 1, 3 (Pa. Super. 2014). To withdraw pursuant to **Anders**, counsel must:

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has

determined that the appeal would be frivolous; 2) furnish a copy of the [*Anders*] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

*Commonwealth v. Cartrette*, 83 A.3d 1030, 1032 (Pa. Super. 2013) (*en banc*) (citing *Commonwealth v. Lilley*, 978 A.2d 995, 997 (Pa. Super. 2009)). With respect to the third requirement of *Anders*, that counsel inform the appellant of his or her rights in light of counsel's withdrawal, this Court has held that counsel must "attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights." *Commonwealth v. Millisock*, 873 A.2d 748, 752 (Pa. Super. 2005).

Additionally, an *Anders* brief must comply with the following requirements:

(1) provide a summary of the procedural history and facts, with citations to the record;

(2) refer to anything in the record that counsel believes arguably supports the appeal;

(3) set forth counsel's conclusion that the appeal is frivolous; and

(4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361.

In the instant matter, counsel has filed a motion to withdraw, certifying that he has reviewed the case and determined that Father's appeal

- 5 -

is without merit. Counsel has attached a copy of his letter to Father, advising him that he may obtain new counsel or raise additional issues *pro se*.[2] Counsel also has filed a brief that includes a summary of the history and facts of the case, issues raised by Father, and counsel's assessment of why those issues are meritless, with citations to relevant legal authority. Accordingly, counsel has substantially complied with the requirements of ***Anders*** and ***Santiago***. ***See Commonwealth v. Reid***, 117 A.3d 777, 781 (Pa. Super. 2015) (observing that substantial compliance with the ***Anders*** requirements is sufficient). We, therefore, may proceed to review the issues outlined in the ***Anders*** brief. In addition, we must "conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." ***Commonwealth v. Flowers***, 113 A.3d 1246, 1250 (Pa. Super. 2015) (footnote omitted).

Counsel's ***Anders*** brief raises the following issues for our review, which we have reordered for ease of disposition.

---

[2] On July 28, 2015, this Court issued a *per curiam* order, indicating that counsel's letter failed to accurately advise Father of his rights, and requiring counsel to send Father a new letter, and to file a new motion to withdraw. On August 3, 2015, counsel filed an amended motion to withdraw, which included a copy of counsel's new letter to Father. However, on August 11, 2015, this Court issued an order indicating that Father's counsel had again misadvised Father, and instructing counsel to send another letter and file another motion to withdraw. Father's counsel filed a second amended motion to withdraw on August 17, 2015. We have examined the letter attached to counsel's second amended motion to withdraw, and we conclude that it sufficiently advises Father of his rights in compliance with the ***Anders*** requirements. Additionally, we note that Father has not responded to counsel's motions to withdraw.

[1.] Whether the [orphans' c]ourt erred in finding that [the Agency] presented clear and convincing evidence to terminate the parental rights of [] [F]ather, where:

    a. [] [F]ather was not given sufficient time to fix his problems with homelessness, unemployment, incarceration, and drug use.

    b. Despite his obstacles, [] [F]ather and the [C]hildren are bonded and love each other, and severing that bond is detrimental to the [C]hildren's well-being.

    c. The resource family alienated the [C]hildren from [] [F]ather by continuously making negative statements about him to the [C]hildren.

    d. The [] Agency and the resource family put obstacles in [] [F]ather's way to make visitation difficult.

    e. The [C]hildren should never have been removed from [] [F]ather's care at the beginning of the case.

[2.] Whether the [orphans' c]ourt erred in finding that [the Agency] presented clear and convincing evidence to change the goal from reunification to placement for adoption, where:

    a. [] [F]ather was not given sufficient time to fix his problems with homelessness, unemployment, incarceration, and drug use.

    b. Despite his obstacles, [] [F]ather and the [C]hildren are bonded and love each other, and severing that bond is detrimental to the [C]hildren's well-being.

    c. The resource family alienated the [C]hildren from [] [F]ather by continuously making negative statements about him to the [C]hildren.

    d. The [] Agency and the resource family put obstacles in [] [F]ather's way to make visitation difficult.

> e. The [C]hildren should never have been removed from [] [F]ather's care at the beginning of the case.

*Anders* brief at 4.

We first address whether orphans' court erred or abused its discretion by involuntarily terminating Father's parental rights to the Children. We consider this issue mindful of our well-settled standard of review.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the

standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In this case, the orphans' court terminated Father's parental rights pursuant to Sections 2511(a)(1), (2), (5), (8), and (b). We need only agree with the orphans' court as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*), *appeal denied*, 863 A.2d 1141 (Pa. 2004). Here, we analyze the court's decision to terminate under Sections 2511(a)(1) and (b), which provide as follows.

> **(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> > (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>
> \*\*\*
>
> **(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions

described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (b).

To meet the requirements of Section 2511(a)(1), "the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties." *In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008) (citing *In re Adoption of R.J.S.*, 901 A.2d 502, 510 (Pa. Super. 2006)). The court must then consider "the parent's explanation for his or her conduct" and "the post-abandonment contact between parent and child" before moving on to analyze Section 2511(b). *Id.* (quoting *In re Adoption of Charles E.D.M.*, 708 A.2d 88, 92 (Pa. 1998)).

This Court has explained that a parent does not perform his or her parental duties by displaying a "merely passive interest in the development of the child." *In re B.,N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004), *appeal denied*, 872 A.2d 1200 (Pa. 2005) (quoting *In re C.M.S.*, 832 A.2d 457, 462 (Pa. Super. 2003), *appeal denied*, 859 A.2d 767 (Pa. 2004)). Rather, "[p]arental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances." *Id.* (citation omitted). Notably, incarceration does not relieve a parent of the obligation to perform parental duties. An incarcerated parent must "utilize available resources to continue a

relationship" with his or her child. *In re Adoption of S.P.*, 47 A.3d 817, 828 (Pa. 2012) (discussing *In re Adoption of McCray*, 331 A.2d 652 (Pa. 1975)).

Instantly, the orphans' court found that Father failed to perform parental duties for the six months preceding the filing of the termination petitions. Orphans' Court Opinion, 5/4/15, at 12.[3] The court reasoned that Father "barely attended visits with the [C]hildren, let alone provide[d] them with the love and support necessary for their physical and mental well-being." *Id.*

After a thorough review of the record in this matter, we conclude that the orphans' court did not err or abuse its discretion by terminating Father's parental rights pursuant to Section 2511(a)(1). During the termination and goal change hearing, Agency caseworker, Michelle Womer, testified that she was assigned to this matter on July 16 or 17, 2013. N.T., 1/12/15, at 24. Ms. Womer prepared the Children's permanency plans. *Id.* at 24-25. Pursuant to the permanency plans, Father was required to enhance his parenting skills, and provide appropriate care and supervision for the Children. *Id.* at 25. Father was to participate in parenting programs and participate in parenting instruction during visitation. *Id.* at 25-26. Additionally, Father was required to remain free from drug addiction in order to provide for the Children's emotional and physical needs. *Id.* at 26.

---

[3] The orphans' court filed a separate opinion in support of the decrees terminating Father's parental rights for each of the Children. However, the opinions are nearly identical, and separate citations are not required.

Father was to follow the recommendations of a drug and alcohol assessment, sign releases for any and all drug and alcohol treatment, and complete three drug tests per week. *Id.* at 27.

Agency caseworker, Aaron Williams, testified that he has been assigned to this matter since March of 2014. *Id.* at 79. Mr. Williams had no information to suggest that Father has completed any of his permanency plan objectives. *Id.* at 100. Father did not participate in any parenting instruction. *Id.* at 89. Father did complete a drug and alcohol assessment in June of 2014. *Id.* at 87. As a result of this assessment, it was recommended that Father attend Turning Point Rehabilitation. *Id.* However, Father left the facility against medical advice on approximately July 8, 2014. *Id.* Father has not reported that he has been involved in any drug treatment since that time. *Id.* Mr. Williams also stated that Father "hasn't been very compliant" with drug screens. *Id.* at 88. On October 28, 2014, Father tested positive for cocaine.[4] *Id.* Additionally, to the knowledge of Mr. Williams, Father has no legal source of income. *Id.* at 98. Father has not had an address and appears to lack stable housing. *Id.* at 97-98.

Ms. Rebecca Toogood testified that she formerly was involved in this matter as an employee at Family Pathways. *Id.* at 39. Most notably, Ms. Toogood assisted with supervised visitation between Father and the

---

[4] Father also tested positive for cocaine on January 29, 2014, and April 16, 2014. *See* Exhibit 1 (results of drug screens collected on January 29, 2014, and April 16, 2014).

Children. *Id.* at 40. Between January 29, 2014, and July 2, 2014, Father participated in two of twenty-three scheduled visits. *Id.* at 41-42. The twenty-one visits that were missed were canceled due to lack of confirmation by Father. *Id.* at 42. Ultimately, Father was removed from the visitation schedule due to a lack of participation. *Id.* at 45. Father's only explanation for failing to attend visits was that "it was difficult to come to Butler." *Id.* at 53.

Ms. Sandra Booth testified that she is an outpatient therapist at Family Pathways, and that she has been providing therapeutic supervised visits in this matter since November 4, 2014. *Id.* at 54. Ms. Booth explained that Father confirmed his attendance for three out of ten scheduled visits, but attended only two visits. *Id.* at 56. Both visits had to be ended early due to Father's erratic behavior and impaired mental state. *Id.* at 62; Exhibit 3 (report from Family Pathways dated January 8, 2015) at 4 (unnumbered pages).

Father stated that he spends time living in both Butler and Pittsburgh, but that "I am in Pittsburgh a lot." N.T., 3/9/15, at 10. When Father is in Pittsburgh, he lives with his sister. *Id.* at 11. When Father is in Butler, he stays with friends. *Id.* Father stated that he is employed by his uncle, who owns a "property management business and I work with him, . . . keeping up the properties." *Id.* Father admitted that he did not attend visits with the Children consistently. *Id.* at 7. Father explained that, "I was in a hospital a lot," because "I had injuries to my hands and I had surgery on my

shoulder. I had an infection in my blood." *Id.* Father specified that he was hospitalized for the infection "around October 2013 . . . ." *Id.* at 8. Father did not indicate when he injured his hands or had surgery on his shoulder, although he claimed that the injury to his hands took place when "I was working with my uncle a[]while back and I got hurt working for him on a job real bad." *Id.* at 7. Father conceded that he was incarcerated from early February until early March of 2015, because he "[d]idn't report to probation." *Id.* at 9. Father also was incarcerated in 2014 for about a month, for reasons that are not clear from the record.[5] *Id.* at 10. Father stated that had an additional probation violation in 2014 for failing to report. *Id.* Father acknowledged that he has failed to comply with his service plan. *Id.* at 11. Father claimed that he one day will be able to obtain housing and income and stay out of jail, and that "I just need more time." *Id.* at 12.

Thus, the record supports the finding of the orphans' court that Father refused or failed to perform parental duties for a period of at least six months prior to the filing of the petitions to terminate his parental rights on July 29, 2014. Father made minimal efforts to complete the objectives outlined in the Children's permanency plans. Moreover, Father attended only two of his scheduled visits during the relevant six months. While it appears that Father was incarcerated for about a month during this period,

_____

[5] The Children's permanency plans indicate that Father was incarcerated on March 5, 2014, and released on April 4 or 5, 2014. Exhibit 1 (July 2014 permanency plans) at B-1.

- 14 -

the record does not reveal that Father made any attempt at maintaining a relationship with the Children while in jail. Father is not entitled to relief.

We next consider whether the orphans' court abused its discretion by terminating Father's parental rights pursuant to Section 2511(b). We have discussed our analysis under Section 2511(b) as follows.

> Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, Section 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.

> > [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011)) (quotation marks and citations omitted).

Here, the orphans' court concluded that terminating Father's parental rights would best serve the needs and welfare of the Children. Orphans'

- 15 -

Court Opinion, 5/4/15, at 16-17. The court emphasized that the Children are bonded with their foster parents, and that, "a bond with Father, if any exists at all, is minimal." *Id.* at 16.

We again conclude that the orphans' court did not abuse its discretion. Ms. Womer testified that she visited the Children once per month at their current foster home, and had "lots of contact" with the Children's foster mother. N.T., 1/12/15, at 30. It took some time for the Children to adjust to their foster placement, but "once they adjusted, they soared. . . . [T]he improvements I saw in the [C]hildren's behavior upon first getting the case and the middle of the case was outstanding." *Id.* Ms. Womer stated that the Children are bonded with their foster parents. *Id.* at 31. Similarly, Mr. Williams testified that he visits the Children at their foster home every thirty days. *Id.* at 95. The Children are doing well in the foster home and appear to be bonded with their foster parents. *Id.* at 95-96. The foster parents are pre-adoptive. *Id.* at 96-97.

Family Pathways permanency facilitator, Miranda Wilburn, testified that she has been visiting the Children at their foster home since June of 2014. *Id.* at 70-71. Ms. Wilburn believed that the Children's foster parents have an adequate home, and can meet the Children's needs. *Id.* at 74. The Children seek out their foster parents for comfort and security. *Id.* at 72.

Ms. Toogood testified that Father and the Children initially did not interact during their visits together. *Id.* at 42. When Father and the

Children finally did interact, their interaction "appeared to be guarded."[6] *Id.*

When Father visited the Children with Mother in September of 2014, Father "spent most of the visit talking to [Ms. Toogood] about his toothache. He had been to the dentist and was in extreme pain . . . ." *Id.* at 46. Father also requested that the Children be moved to a different foster home because the Children referred to their foster parents as "mom and dad," which irritated Father. *Id.*

Thus, the record supports the conclusion of the orphans' court that it would best serve the Children's needs and welfare to terminate Father's parental rights. As observed by the orphans' court, the Children are thriving in foster care, and are bonded with their foster parents. In contrast, Father has barely even seen the Children since they were placed in foster care. While there is some evidence in the record that the Children maintain a degree of affection for Father, it is clear that any possible bond is outweighed by Father's complete inability to care for the Children, and by

---

[6] A report from Family Pathways, dated January 22, 2014, provides a similar description of the visits between Father and the Children. *See* Exhibit 1 (report from Family Pathways dated January 22, 2014) at 4 (observing that the Children "appeared to be hesitant and distracted in [Father's] presence" during a visit on November 6, 2013). However, a later report from Family Pathways, dated July 3, 2014, provides a more positive assessment. According to the report, D.M.X.W. "appeared close" to Father during a visit on January 29, 2014, and referred to Father as "Daddy." Exhibit 1 (report from Family Pathways dated July 3, 2014) at 3. During a visit on April 16, 2014, D.M.X.W. was initially hesitant, "but then appeared to open up quickly," and informed Father that "I still love you." *Id.* L.J.W. "often asked [Father] to pretend play with him," and both of the Children "were very interactive with [Father]." *Id.*

- 17 -

the Children's need for permanence and stability. ***See C.D.R.***, 111 A.3d at 1220 (concluding that the appellant mother's bond with C.D.R was outweighed by the mother's "repeated failure to remedy her parental incapacity," and by C.D.R.'s need for permanence and stability). No relief is due.

Next, we consider whether the orphans' court abused its discretion by changing the Children's permanency goals to adoption.

> [T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

***In re R.J.T.***, 9 A.3d 1179, 1190 (Pa. 2010).

> Pursuant to [42 Pa.C.S.A.] § 6351(f) of the Juvenile Act, when considering a petition for a goal change for a dependent child, the juvenile court is to consider, *inter alia:* (1) the continuing necessity for and appropriateness of the placement; (2) the extent of compliance with the family service plan; (3) the extent of progress made towards alleviating the circumstances which necessitated the original placement; (4) the appropriateness and feasibility of the current placement goal for the children; (5) a likely date by which the goal for the child might be achieved; (6) the child's safety; and (7) whether the child has been in placement for at least fifteen of the last twenty-two months. The best interests of the child, and not the interests of the parent, must guide the trial court. As this Court has held, a child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting.

***In re A.B.***, 19 A.3d 1084, 1088-89 (Pa. Super. 2011) (citations and quotation marks omitted).

For the reasons discussed throughout this memorandum, we again conclude that the orphans' court did not abuse its discretion. The Children are doing well in foster care and are bonded with their foster parents. Meanwhile, Father abandoned the Children and failed to advance toward the completion of the Children's permanency plans. Adoption clearly will serve the needs and welfare of the Children by providing them with a stable and permanent home.

Accordingly, our independent review of Father's claims demonstrates that they do not entitle him to relief. Moreover, our review of the record does not reveal any non-frivolous issues overlooked by counsel. *Flowers*, 113 A.3d 1246, 1250. Therefore, we grant counsel's motion to withdraw, and affirm the orphans' court's decrees and orders.

Motion to withdraw granted. Decrees affirmed. Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/15/2015